UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC CASTELLANOS, LUIS RIOS, ALLEN STETLER, JEAN PIERRE LOUIS, and JOSE PORTILLO,<br><br>Plaintiffs,<br><br>-against-<br><br>RAYMOURS FURNITURE COMPANY, INC.,<br><br>Defendant. | Civil Action No.: 2:17-cv-01923(JFB/ARL) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS PLAINTIFFS' COMPLAINT, AND STRIKE PLAINTIFFS' CLASS AND COLLECTIVE ALLEGATIONS**

Of Counsel:  David M. Wirtz
Kevin R. Vozzo
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022-3298
Tel:  212.583.9600
*Attorneys for Defendant*

## TABLE OF CONTENTS

PAGE

I.   PRELIMINARY STATEMENT ............................................................................................. 1

II.  STANDARD OF REVIEW ................................................................................................... 1

III. RELEVANT FACTS ............................................................................................................. 2

   A.   Plaintiffs' Complaint .................................................................................................. 2

   B.   Raymour & Flanigan's "Employee Arbitration Program" ....................................... 3

   C.   The "Associate's Agreement & Consent" form ........................................................ 4

IV.  PLAINTIFFS SHOULD BE ORDERED TO ARBITRATE THEIR CLAIMS ON
     AN INDIVIDUAL BASIS PURSUANT TO THE FAA ..................................................... 5

   A.   A valid agreement to arbitrate exists ......................................................................... 7

   B.   All of Plaintiffs' claims fall within the scope of their arbitration agreement ...... 10

V.   PLAINTIFFS HAVE AGREED NOT TO PROCEED ON A CLASS OR
     COLLECTIVE BASIS ........................................................................................................ 10

VI.  THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT WITHOUT
     PREJUDICE TO THEIR ABILITY TO PURSUE SUCH COMPENSATION- OR
     EMPLOYMENT-RELATED CLAIMS IN ARBITRATION .......................................... 14

VII. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013) ................................................................................................6, 13

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ................................................................................6, 11, 12, 13

*Baravati v. Josephthal, Lyon & Ross*,
   28 F.3d 704 (7th Cir. 1994) ...............................................................................................11

*Beletsis v. Credit Suisse First Boston Corp.*,
   2002 U.S. Dist. LEXIS 16586 (S.D.N.Y. Aug. 28, 2002) ..................................................8

*Bensadoun v. Jobe-Riat*,
   316 F.3d 171 (2d Cir. 2003) ..............................................................................................1

*Brown v. Coca-Cola Enterprises*,
   2009 U.S. Dist. LEXIS 35798 (E.D.N.Y. April 28, 2009) ................................................9

*Brown v. St. Paul Travelers Cos.*,
   331 Fed. Appx. 68, 2009 U.S. App. LEXIS 13154 (2d Cir. June 19, 2009) ................9, 14

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*,
   346 F.3d 360 (2d Cir. 2003) ..............................................................................................7

*Chanchani v. Salomon/Smith Barney, Inc.*,
   2001 U.S. Dist. LEXIS 2036 (S.D.N.Y. March 1, 2001) ..................................................8

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ...........................................................................................................6

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) .............................................................................................................7

*Clookey v. Citibank, N.A.*,
   2015 U.S. Dist. LEXIS 164802 (N.D.N.Y. Dec. 9, 2015) .................................................1

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
   58 F.3d 16 (2d Cir. 1995) ...........................................................................................5, 10

*Curry v. Volt Info. Svcs., Inc.*,
   2008 U.S. Dist. LEXIS 20910 (S.D.N.Y. Mar. 18, 2008) .................................................8

*Direct TV, Inc. v. Imburgia*,
 __ U.S. __, 136 S. Ct. 463 (2015)..................................................................................13

*Dixon v. NBCUniversal Media, LLC*,
 947 F. Supp. 2d 390 (S.D.N.Y. May 28, 2013) .................................................................9

*Franco v. Allied Interstate LLC*,
 2014 U.S. Dist. LEXIS 47077 (April 2, 2014) ................................................................15

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*,
 815 F.2d 840 (2d Cir. 1987)...............................................................................................6

*Gilmer v. Interstate/Johnson Lane Corp.*,
 500 U.S. 20 (1991).............................................................................................................6

*Gold v. Deutsche Aktiengesselschaft*,
 365 F.3d 144 (2d Cir. 2004)...............................................................................................7

*Isaacs v. OCE Business Services*,
 968 F. Supp. 2d 564 (S.D.N.Y. Sept. 4, 2013) ................................................................14

*LaVoice v. UBS Fin. Servs.*,
 2012 U.S. Dist. LEXIS 5277 (S.D.N.Y. Jan. 13, 2012) ....................................................2

*Litvinov v. United Health Group, Inc.*,
 2014 U.S. Dist. LEXIS 36237 (S.D.N.Y. Mar. 11, 2014) .......................................8, 9, 14

*Manigault v. Macy's East, LLC*,
 318 Fed. Appx. 6 (2d Cir. March 25, 2009) ......................................................................9

*Mastrobuono v. Shearson Lehman Hutton*,
 514 U.S. 52 (1995).......................................................................................................6, 11

*McNeill v. Raymour & Flanigan Furniture*,
 U.S. Dist. LEXIS 167285 (N.D.N.Y. Dec. 5, 2016)..........................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983)...............................................................................................................6

*Mumin v. Uber Techs., Inc.*,
 2017 WL 934703 (E.D.N.Y. Mar. 8, 2017).....................................................................13

*Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*,
 88 F.3d 129 (2d Cir. 1996)..........................................................................................7, 10

*Patterson v. Raymours Furniture Company, Inc.*,
 2016 WL 4598542 (2d Cir. Sept. 26, 2016) (Summary Order)......................................13

*Patterson v. Raymours Furniture Company, Inc.*,
  96 F. Supp. 3d 71 (S.D.N.Y. 2015), *aff'd*, 2016 WL 4598542 (2d Cir. Sept. 2,
  2016) (Summary Order) ................................................................................................ *passim*

*Perry v. Thomas*,
  482 U.S. 483 (1987) .................................................................................................................. 6

*Rent-A-Center West, Inc. v. Jackson*,
  561 U.S. 63 (2010) .................................................................................................................. 10

*Ryan v. JPMorgan Chase & Co.*,
  924 F. Supp. 2d 559 (S.D.N.Y. 2013) ..................................................................................... 14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ..................................................................................................... 6, 11, 12

*Sutherland v. Ernst & Young LLP*,
  726 F.3d 290 (2d Cir. 2013) .................................................................................................... 13

*Thomas v. Public Storage, Inc.*,
  957 F. Supp. 2d 496 (S.D.N.Y. 2013) ................................................................................. 9, 14

*Torres v. United Healthcare Servs.*,
  920 F. Supp. 2d 368 (E.D.N.Y. 2013) ............................................................................... 13, 14

*Volt Info. Sciences v. Bd. of Trustees*,
  489 U.S. 468 (1989) ................................................................................................................ 11

**Statutes**

9 U.S.C. § 2 ..................................................................................................................................... 5

9 U.S.C. § 3 ............................................................................................................................. 11, 14

9 U.S.C. § 4 ..................................................................................................................... 5, 10, 14

I.     **PRELIMINARY STATEMENT**

Plaintiffs Eric Castellanos, Luis Rios, Allen Stetler, Jean Pierre Louis, and Jose Portillo, and Opt-In Plaintiffs Edwin Hernandez, Romney Olalla, Christian Rodriguez, Hugo Sanchez, and Santiago Pena, are parties to written arbitration agreements with Defendant Raymours Furniture Company, Inc. ("Raymour & Flanigan" or "the Company"). Those agreements are expressly governed by the Federal Arbitration Act ("FAA"). They cover all employment-related claims, including those averred in Plaintiffs' Complaint, and they require each Plaintiff to proceed with his claims only on an individual, rather than a collective or class, basis.

Courts within this Circuit routinely enforce similar arbitration agreements containing class action waivers. In fact, the Southern District of New York enforced a prior iteration of the Company's arbitration agreement in a putative wage and hour class and collective action, and the decision granting Raymour & Flanigan's motion to compel individual arbitration of claims in that case was recently upheld by the Second Circuit. The Northern District of New York likewise recently enforced the Company's arbitration agreement in a discrimination action.

Because Plaintiffs in this case have refused to honor their agreements to arbitrate, Raymour & Flanigan brings this motion, pursuant to the FAA, to compel them to submit their claims to individual arbitration pursuant to the terms of Raymour and Flanigan's Employee Arbitration Program, should they elect to pursue such claims; to dismiss their Complaint; and to strike their class and collective allegations.

II.    **STANDARD OF REVIEW**

"In the context of motions to compel arbitration brought under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see Clookey v. Citibank, N.A.*, 2015 U.S. Dist. LEXIS 164802, at *1 fn2 (N.D.N.Y. Dec. 9, 2015)

(on a motion to compel arbitration, upholding a class waiver and compelling individual arbitration of claims). Thus, "[a] motion to compel arbitration may be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *LaVoice v. UBS Fin. Servs.*, 2012 U.S. Dist. LEXIS 5277, at **5-6 (S.D.N.Y. Jan. 13, 2012) (compelling arbitration of wage and hour claims) (internal punctuation and citations omitted).

Here, Raymour & Flanigan's motion is predicated upon allegations in the Complaint, the arbitration agreements signed by each Plaintiff, and the accompanying Declaration of Stephen McPeak, dated July 27, 2017 ("McPeak Decl."). These materials demonstrate that there is no genuine issue of material fact, and that the parties' arbitration agreements should be enforced according to their terms.

**III.    RELEVANT FACTS**

   **A.    Plaintiffs' Complaint**

Plaintiffs Eric Castellanos, Luis Rios, Allen Stetler, Jean Pierre Louis, and Jose Portillo allege that Raymour & Flanigan failed to pay them, and the class of employees they purport to represent, overtime compensation in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiffs further allege that the Company violated the NYLL by failing to provide them, and members of the putative class, with wage notices. (Compl., ¶¶ 79-90.) They bring their claims individually, and as the representatives of a purported class, pursuant to section 216(b) of the FLSA and F.R.C.P. Rule 23. (*Id.*, ¶¶ 64-66.)[1]

---

[1] Edwin Hernandez, Romney Olalla, Christian Rodriguez, Hugo Sanchez, and Santiago Pena "opted-in" to the *Castellanos* action by filing consent forms with this Court. (Dkt. #2-5, 15.)

B. **Raymour & Flanigan's "Employee Arbitration Program"**

Raymour & Flanigan has adopted an Employee Arbitration Program ("EAP" or the "Program") that covers all employment-related and compensation-related claims, including those averred in Plaintiffs' Complaint. The EAP is written and presented to employees in an easy-to-read, FAQ-type format. (McPeak Decl., ¶ 5.) It states that the Program is "an essential, required term and condition of your continued employment." (*Id.*, Ex. 1, p. 1.)

The EAP requires employees to submit to final and binding arbitration all employment and compensation-related "Claims" that are asserted or pursued at any time after February 1, 2014, even if those Claims arose or were initially asserted before that date. (McPeak Decl., ¶ 7, Ex. 1, p. 1.) The term "Claims" is defined as follows:

> [A]ny employment-related or compensation-related claims, disputes, controversies or actions between you and us (including any parties named as codefendants with us) that: (1) in any way arise from or relate to your employment or the termination of your employment with us; and (2) are based upon a "legally-protected right." This includes disputes about your hiring, firing, wages, compensation, discipline, leaves of absence, accommodations and workplace treatment as well as our policies and practices (including any pattern, practice, act or omission) relating to such matters. Examples include (but are not limited to) those alleging discrimination, harassment, hostile work environment, retaliation, or failure to pay wages in accordance with law. "Claim" means not only initial claims but also counterclaims, cross-claims and third-party claims, regardless of whether such claims seek legal, equitable or declaratory relief.

(*Id.*, ¶ 9, Ex. 1, p. 2.)

The EAP also defines a "legally-protected right" and identifies, without limitation, specific state and federal laws covered by the EAP as follows in relevant part:

> ""Legally-protected right" means any right protected by statute, regulation, constitution, contract or common law, including but not limited to rights under:
> - . . . [T]he Fair Labor Standards Act;
> - [S]tate wage and hour laws; . . .

3

- [A]ny other federal, state or local statute, regulation or common law doctrine regarding employment discrimination, retaliation, whistleblowing, leave of absence, interference with protected rights, conditions of employment or termination of employment or payment of wages or other benefits of employment.

(McPeak Decl., ¶ 10, Ex. 1, pp. 2-3.)

Finally, the EAP requires employees to pursue "Claims" as so-defined individually rather than on a class or collective action basis, which is explained to employees in the same easy to understand FAQ format as follows:

> **CAN CLAIMS BE DECIDED BY CLASS OR COLLECTIVE ACTION?**
> **No. This section describes the "Class Action Waiver" of the Program. Claims cannot be litigated or arbitrated by way of a class or collective action. All Claims between you and us must be decided individually. Neither you nor we will have the right, with respect to any Claim, to do any of the following in court or before an arbitrator:**
> **• obtain relief from a class action or collective action, either as a class representative, class member or class opponent;**
> **• act as a private attorney general; or**
> **• join or consolidate your Claim with the Claims of any other person.**
>
> **The arbitrator shall have no authority or jurisdiction to process, conduct or rule upon any class, collective, or private attorney general proceeding.**

(McPeak Decl., ¶ 11, Ex. 1, p. 7 [bold emphasis in original].)

### C. The "Associate's Agreement & Consent" form

The EAP was in effect during Plaintiffs' employment, and it remains in effect today. (McPeak Decl., ¶ 6.) Plaintiffs agreed to the terms of the EAP by signing a document entitled "Associate's Agreement & Consent" (the "Agreement").[2] (McPeak Decl., ¶ 12, Exs. 2-6.) By signing the Agreement, each of them acknowledged that he had received a copy of the EAP, that he had a full and fair opportunity to review the EAP, and that he agreed to its terms. (*Id*.)

---

[2] Plaintiffs Castellanos, Rios, Stetler, and Louis executed the Agreement in March 2014, Plaintiff Portillo executed the Agreement in April 2014, and Opt-In Plaintiffs Hernandez, Olalla, Rodriguez, Sanchez, and Pena executed the Agreement between March and May 2014. (McPeak Decl., ¶ 12, Exs. 2-11.)

4

The Agreement incorporates the EAP by reference, and also reiterates several key concepts set forth in the EAP. For example, Plaintiffs acknowledged their understanding that "**if [they] attempt[ed] to assert any Claims against R&F by means other than arbitration described in the Program, R&F w[ould] have the unqualified right to require [them] to arbitrate such Claims in accordance with the Program.**"[3] (McPeak Decl., ¶ 13, Exs. 2-6, p. 1 [emphasis in original].) Each Plaintiff also agreed that he would "**not seek and [could not] seek (in arbitration or otherwise) to have any Claims decided on a class or collective actions basis.**" (*Id.*, p. 2 [emphasis in original].) After signing the Agreements, Plaintiffs continued their employment with the Company. (McPeak Decl., ¶ 14.)

### IV. PLAINTIFFS SHOULD BE ORDERED TO ARBITRATE THEIR CLAIMS ON AN INDIVIDUAL BASIS PURSUANT TO THE FAA.

"Federal policy strongly favors arbitration as an alternative dispute resolution process." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (internal citation omitted). The FAA provides at section 2 that written agreements to arbitrate controversies "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA is directive. It requires a federal court to order parties to proceed to arbitration if there has been a failure, neglect, or refusal of any party to honor an agreement to arbitrate. *See* 9 U.S.C. § 4.

As the Second Circuit has observed: "These provisions are mandatory: '[B]y its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that

---

[3] The Agreements state that the term "Claims" "has the meaning defined in the Program and includes "employment and compensation-related claims, disputes, controversies or allegations . . . against R&F . . . [including] disputes about . . . employment, discharge, wages, discipline, leaves of absence, accommodations and workplace treatment as well as Raymour & Flanigan's policies and practices. **Examples include but are not limited to Claims alleging . . . failure to pay wages under such laws as . . . the Fair Labor Standards Act . . . and any similar federal, state and local laws addressing . . . wage payment or other employment-related rights.**" (McPeak Decl., ¶ 13, Exs. 2-6, p. 2 [emphasis in original].)

5

district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)). Indeed, it is the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("we have said on numerous occasions that the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms'"); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) ("The 'principal purpose' of the FAA is to 'ensure that private arbitration agreements are enforced according to their terms'") (internal citations omitted); *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) ("courts must 'rigorously enforce' arbitration agreements according to their terms").[4]

In this case, the EAP is indisputably governed by the FAA. The EAP so states (*see* McPeak Decl., Ex. 1, p. 8) ("Arbitration proceedings shall comply with and be governed by the provisions of the FAA and not by any state law concerning arbitration"), and Plaintiffs' employment with the Company, and their performance of delivery services for Raymour & Flanigan subject to the EAP, affects commerce sufficient for the FAA to apply. *See generally, Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63-64 (1995) (FAA applies even where

---

[4] In keeping with this "liberal federal policy favoring arbitration," the Supreme Court has consistently endorsed arbitration as an effective means of dispute resolution in employment cases. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (enforcing arbitration agreement signed during employee's application process with respect to claims brought under California's anti-discrimination statute); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (ADEA case enforcing agreement to arbitrate controversies arising out of employment that was contained in securities representative registration application); *Perry v. Thomas,* 482 U.S. 483, 490-91 (1987) (enforcing private arbitration agreement in action for collection of wages).

contract also provides that state law governs); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding the requisite commerce for FAA coverage even when the individual transaction did not have a substantial effect on commerce).

In determining whether to compel arbitration under the FAA, two "gateway" issues need to be evaluated: (i) whether there is a valid agreement to arbitrate between the parties; and (ii) whether the agreement covers the dispute. *See Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996); *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). Both gateway issues are satisfied here.

### A.  A valid agreement to arbitrate exists.

"Whether one can be bound by an arbitration clause is usually determined by looking at generally accepted principles of contract law. Under such principles, in the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them. . .'" *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (quoting *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 416, 125 N.E. 814 (1920)) (internal citations omitted).

In *Patterson v. Raymours Furniture Company, Inc.*, 96 F. Supp. 3d 71 (S.D.N.Y. 2015), *aff'd*, 2016 WL 4598542 (2d Cir. Sept. 2, 2016) (Summary Order), the Hon. Valerie E. Caproni applied this principle and enforced a prior, yet virtually identical, iteration of the EAP, which was contained in the Company's handbook. The plaintiff in that case, Connie Patterson, electronically agreed to the terms of Raymour & Flanigan's arbitration program then in effect as a condition of her employment, by clicking a box indicating that she had reviewed the handbook

7

containing the program's terms.[5]  The court found that by electronically acknowledging that she had read and reviewed the employee handbook, and by thereafter continuing her employment, Ms. Patterson had agreed to the terms of the arbitration program. *Id*. at 75-78.[6]

The same conclusion should be reached here, where assent to the EAP is even more apparent than it was in *Patterson*.  Specifically, Plaintiffs in this case each hand-signed, in ink,  a two-page Associate's Agreement & Consent form, through which they affirmatively acknowledged that they had received a copy of Raymour & Flanigan's standalone EAP, and that they agreed to all of the terms of the Program.  (McPeak Decl., Exs. 2-6.)  Each of these Agreements not only incorporated the full Program terms by reference, but also summarized critical terms, such as the agreement to waive jury by trial, the promise to submit all claims to binding arbitration, the understanding that claims could not be brought by way of class or collective action, and the definition of claims covered under the Program.  By executing the Agreements, Plaintiffs further acknowledged their understanding that "**if [they] attempt[ed] to assert any Claims against R&F by means other than arbitration described in the Program, R&F w[ould] have the unqualified right to require [them] to arbitrate such Claims in accordance with the Program**." (*Id*. at p. 1.)  They also agreed that they would "**not seek and [could not] seek (in arbitration or otherwise) to have any Claims decided on a class or**

---

[5] Like the EAP to which Plaintiffs agreed, the program to which Patterson agreed required employees "to arbitrate 'any employment-related or compensation-related claims . . . that in any way arise from or relate to [their] employment . . . and that are based upon a legally protected right.'" *Id*. at 75.

[6] *See also Chanchani v. Salomon/Smith Barney, Inc.*, 2001 U.S. Dist. LEXIS 2036, at *7 (S.D.N.Y. March 1, 2001) ("Courts in this district routinely uphold arbitration agreements contained in employee handbooks where, as here, the employee has signed an acknowledgment form."); *Litvinov v. United Health Group, Inc.*, 2014 U.S. Dist. LEXIS 36237, at *11 (S.D.N.Y. Mar. 11, 2014) (plaintiff's assent to arbitration policy found where he received notice of the policy and electronically acknowledged it); *Curry v. Volt Info. Svcs., Inc.*, 2008 U.S. Dist. LEXIS 20910, at *2-7 (S.D.N.Y. Mar. 18, 2008) (compelling arbitration where employee received handbook containing arbitration policy and signed an acknowledgment form); *Beletsis v. Credit Suisse First Boston Corp.*, 2002 U.S. Dist. LEXIS 16586, at *8-9 (S.D.N.Y. Aug. 28, 2002) (same).

8

**collective actions basis.**" (*Id.*, p. 2 [emphasis in original].)  Plaintiffs, therefore, expressly agreed to be bound by the terms of the EAP.  *See McNeill v. Raymour & Flanigan Furniture*, 2016 U.S. Dist. LEXIS 167285, at *15-16 (N.D.N.Y. Dec. 5, 2016) (enforcing EAP in discrimination action, finding that "Defendant established that an agreement to arbitrate the claims at issue existed on two different factual bases (i.e., that Plaintiff knowingly agreed to arbitrate, among other things, Title VII claims against Defendant in December 2013 and that he did so again in March 2014 [through his execution of the Associate's Agreement & Consent form])").

In addition, after signing the Agreements, Plaintiffs continued their employment with the Company (*see* McPeak Decl., ¶ 14), *further* manifesting their agreement to the EAP.  *See Patterson*, 96 F. Supp. 3d at 76 ("By continuing to work after receiving notice of the EAP, Plaintiff agreed to the terms of the arbitration program."); *Brown v. St. Paul Travelers Cos.*, 331 Fed. Appx. 68, at *3 (2d Cir. June 19, 2009) (employee is "deemed to have accepted" the arbitration policy contained in employee handbook by continuing to work after being advised that it was her responsibility to read and understand all of the company's policies).[7]

In sum, Plaintiffs and the Company formed a valid agreement to arbitrate.

---

[7] *See, also, Thomas v. Public Storage, Inc.*, 957 F. Supp. 2d 496, at *7-10 (S.D.N.Y. 2013) (plaintiff bound by handbook-based arbitration policy where she continued working after receiving notice of the policy, despite her challenge that she never signed anything and that her manager hijacked her user ID to create her electronic acknowledgment); *Manigault v. Macy's East, LLC*, 318 Fed. Appx. 6, 8 (2d Cir. March 25, 2009) ("New York, unlike other jurisdictions, has found that continued employment, without more, is sufficient to manifest assent"); *Litvinov*, 2014 U.S. Dist. LEXIS 36237, at *12 ("there is no question that [employees were] on notice about the Arbitration Policy and the fact that if they began and/or continued working for [employer] they would be deemed to have assented to its terms"); *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 400 (S.D.N.Y. May 28, 2013) (plaintiff's continued employment after receiving notice of arbitration agreement "constituted acceptance of the binding arbitration agreement"); *Brown v. Coca-Cola Enterprises*, 2009 U.S. Dist. LEXIS 35798, at *20-21 (E.D.N.Y. April 28, 2009) (by continued employment, plaintiff manifested assent to arbitration provision).

### B. All of Plaintiffs' claims fall within the scope of their arbitration agreement.

Prevailing federal precedent directs courts to "construe arbitration clauses as broadly as possible." *Collins & Aikman Prods.*, 58 F.3d at 19 (internal quotations and citations omitted). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25.

This case does not present a close call as to the second gateway issue set forth in *Belco Petroleum*. Raymour & Flanigan's EAP broadly covers "all employment-related and compensation-related" claims. "Claims" are defined to include anything based upon a "legally protected right." "Legally protected rights" are defined to include "any right protected by statute, regulation, constitution, contract or common law, including but not limited to rights under: . . . the Fair Labor Standards Act; . . . state wage and hour laws; . . . [and] any other federal, state or local statute, regulation or common law doctrine regarding employment discrimination, retaliation, whistleblowing, leave of absence, interference with protected rights, conditions of employment or termination of employment or payment of wages or other benefits of employment." (McPeak Decl., ¶ 9, Ex. 1, p. 2.)

The Complaint asserts claims for unpaid overtime under the FLSA and NYLL, and a claim for failure to provide wage notices under the NYLL. (Compl., ¶¶ 79-90.) All of these claims fall squarely within scope of the definitions set forth, *supra*, and all are expressly covered by the parties' agreements to arbitrate. Arbitration should be compelled accordingly.

### V. PLAINTIFFS HAVE AGREED NOT TO PROCEED ON A CLASS OR COLLECTIVE BASIS.

This Court should also order the parties to arbitrate Plaintiffs' claims solely on an individual basis. "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Section 4 of the FAA

10

provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4.

Similarly, section 3 of the FAA authorizes federal courts to stay litigation until the arbitration has been conducted "in accordance with the terms of the [parties' arbitration] agreement…[.]" 9 U.S.C. § 3.  The "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 479 (1989); *see Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 53-54 (1995) (enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA); *see Concepcion*, 131 S. Ct. at 1748 (same).

The Supreme Court has made abundantly clear that parties to an arbitration agreement are free to set the terms of their agreement. *Volt*, 489 U.S. at 479 (parties may "specify by contract the rules under which that arbitration will be conducted"). Taking its lead from the Supreme Court, the Seventh Circuit Court of Appeals has described that leeway in the following rather raw terms: "Indeed, short of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys, parties can stipulate to whatever procedures they want to govern the arbitration of their disputes." *Baravati v. Josephthal, Lyon & Ross*, 28 F.3d 704, 709 (7th Cir. 1994).

The kinds of terms that parties are free to agree upon, or not, include a provision precluding class and collective adjudication.  As the Supreme Court confirmed in *Stolt-Nielsen*, it is improper to force a party into a class proceeding to which it did not agree, because arbitration "is a matter of consent."  559 U.S. at 664.  Parties "may specify *with whom* they choose to arbitrate their disputes." *Id.* at 683 (emphasis in original).  As such, "a party may not

11

be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id*. at 684.

Here, as stated above, the parties did not agree to class arbitration. On the contrary, they expressly prohibited class and collective claims:

> **CAN CLAIMS BE DECIDED BY CLASS OR COLLECTIVE ACTION?**
> **No. This section describes the "Class Action Waiver" of the Program. Claims cannot be litigated or arbitrated by way of a class or collective action. All Claims between you and us must be decided individually. Neither you nor we will have the right, with respect to any Claim, to do any of the following in court or before an arbitrator:**
> **• obtain relief from a class action or collective action, either as a class representative, class member or class opponent;**
> **• act as a private attorney general; or**
> **• join or consolidate your Claim with the Claims of any other person.**
>
> **The arbitrator shall have no authority or jurisdiction to process, conduct or rule upon any class, collective, or private attorney general proceeding.**

(McPeak Decl., ¶ 11, Ex. 1, p. 7 [bold emphasis in original].)

In *Concepcion*, the Supreme Court upheld the enforceability of class waivers in FAA-governed arbitration agreements, reaffirming the bedrock principle that arbitration agreements must be enforced as written. In that case, the Court held that the California Supreme Court's rule restricting enforcement of class action waivers was preempted by the FAA, because it interfered with the fundamental attributes of arbitration and created a scheme inconsistent with the FAA. *See* 131 S. Ct. at 1753.[8]

---

[8] The Supreme Court has also explained that class *arbitration* is inconsistent with the fundamental attributes of arbitration as contemplated by the FAA. *Concepcion*, 131 S. Ct. at 1750-51. In particular, the Court stated in *Concepcion* that class arbitration sacrificed the principal advantage of arbitration – its informality – and rendered the process slower and more costly. *Id.* at 1751-52. The Court further noted it was unlikely Congress intended to have an arbitrator address the more formal procedural requirements of a class proceeding. *Id.* Finally, the Court opined that arbitration was poorly suited to the higher stakes of class litigation and significantly increased the risks to defendants, especially given the absence of multilayered judicial review. *Id.* at 1752. Accordingly, because the Supreme Court concluded that

In *Italian Colors*, an appeal from a decision of the Second Circuit, the Supreme Court reiterated that courts "must rigorously enforce" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes." 133 S. Ct. at 2309. The Court reversed the Second Circuit and enforced a class action waiver in an arbitration agreement, ruling that such a waiver in a FAA-governed arbitration agreement is enforceable, even if the plaintiff's costs of individually arbitrating a claim exceed the potential individual recovery. *Id.* at 2311-12.

The Second Circuit has followed this precedent, as it must, in cases involving wage and hour claims under the FLSA and NYLL, including when it affirmed the district court's decision in *Patterson*, enforcing an identical class action waiver. *See Patterson v. Raymours Furniture Company, Inc.*, 2016 WL 4598542 (2d Cir. Sept. 26, 2016) (Summary Order) (enforcing individual arbitration of FLSA claims and rejecting argument that National Labor Relations Act and Norris La-Guardia Act preclude enforcement of class and collective action waiver); *see also Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) (upholding class action waiver and reversing district court's decision to deny motion to compel arbitration of plaintiffs' FLSA and NYLL overtime claims).

District courts have also followed suit. *See, e.g., Mumin v. Uber Techs., Inc.*, 2017 WL 934703, at *11-12 (E.D.N.Y. Mar. 8, 2017) (compelling arbitration and enforcing class action waiver in case asserting claims under the NYLL over objection that Norris La-Guardia Act precluded enforcement of the class waiver); *Torres v. United Healthcare Servs.*, 920 F. Supp. 2d

---

California's *Discover Bank* rule effectively forced parties into class arbitration as a condition of enforcement of their arbitration agreement, and because class arbitration interfered with the fundamental attributes of arbitration, including the paramount principle that arbitration agreements are to be enforced as written, the Court held that the *Discover Bank* rule was inconsistent with the FAA and thus preempted. *Id.* at 1754. *Concepcion* was later reaffirmed by the Supreme Court in *Direct TV, Inc. v. Imburgia*, __ U.S. __, 136 S. Ct. 463, 468 (2015) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act").

368 (E.D.N.Y. 2013) (compelling arbitration of plaintiff's collective FLSA claims on an individual basis); *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 563-66 (S.D.N.Y. 2013) (enforcing class arbitration waiver in FLSA case, and granting defendant's motion to dismiss and compel arbitration of plaintiff's claim on an individual basis).

Accordingly, the Company is entitled to an order compelling Plaintiffs to submit their individual claims – and only their individual claims – to arbitration, if they elect to pursue them.

## VI. THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT WITHOUT PREJUDICE TO THEIR ABILITY TO PURSUE SUCH COMPENSATION- OR EMPLOYMENT-RELATED CLAIMS IN ARBITRATION.

Courts in this Circuit routinely dismiss claims that are subject to an arbitration agreement. *See, e.g., Isaacs v. OCE Business Services*, 968 F. Supp. 2d 564, 572 (S.D.N.Y. Sept. 4, 2013); *Litvinov*, 2014 U.S. Dist. LEXIS 36237, at *12 (compelling arbitration and dismissing the complaint); *Thomas*, 957 F. Supp. 2d at 500 (same); *Torres*, 920 F. Supp. 2d at 379 ("defendants' motion to compel arbitration is granted and the case is dismissed"); *Brown*, 2009 U.S. App. LEXIS 13154, at *6 ("Defendant's motion to dismiss [employee's] complaint and to compel arbitration was properly granted by the District Court"); *Ryan*, 924 F. Supp. 2d at 562 ("If the Court finds the arbitration agreement is valid, and the claim is arbitrable, the Court may dismiss the case and order the parties to arbitrate").

Here, all of Plaintiffs' claims are subject to arbitration on an individual basis. Accordingly, this Court should compel Plaintiffs to arbitrate their individual claims, and dismiss the Complaint without prejudice to Plaintiffs' ability to pursue their claims in arbitration. Should the Court decline to dismiss Plaintiffs' Complaint outright, the Court should stay the current proceedings pending arbitration pursuant to 9 U.S.C. §§ 3, 4.[9]

---

[9] As of the date of this filing, five other individuals have "opted in" to this action by filing a consent form with this Court. All of the Opt-In Plaintiffs are subject to the EAP and their own arbitration agreements.

14

## VII. CONCLUSION

For the all the foregoing reasons, Raymour & Flanigan respectfully requests that this Court compel Plaintiffs and Opt-In Plaintiffs to arbitrate their claims on an individual basis, should they elect to pursue them, dismiss Plaintiffs' Complaint, and strike their class and collective allegations.

Respectfully submitted,

Date:   July 28, 2017
        New York, New York

*/s/ David M. Wirtz*
David M. Wirtz
Kevin R. Vozzo
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022-3298
Tel: 212.583.9600

*Attorneys for Defendant*
*Raymours Furniture Company, Inc.*

---

(McPeak Decl., ¶¶ 6-14, Exs. 7-11.)  Accordingly, for the reasons set forth above, they too should be compelled to arbitrate their claims on an individual basis.  If the Court is not inclined to compel the *Opt-In* Plaintiffs to submit their claims to arbitration, their claims should still be dismissed.  More specifically, if the Court orders the Named Plaintiffs to arbitrate their claims on an individual basis, and dismisses their Complaint, as it should, there will no longer be a pending action for opt-in plaintiffs to join.  Thus, even if the Court does not compel them to submit their claims to individual arbitration, the Court should still dismiss without prejudice the claims of any individuals who have filed a consent form, or who opt in to this litigation while this motion is *sub judice. See, e.g., Franco v. Allied Interstate LLC*, 2014 U.S. Dist. LEXIS 47077, at *6-7 (April 2, 2014) ("mootness of a named plaintiff's individual claim renders a collective action requesting statutory damages under the Fair Labor Standards Act (FLSA) moot even prior to certification" and "if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot").

15