UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC CASTELLANOS, LUIS RIOS, ALLEN STETLER, JEAN PIERRE LOUIS, and JOSE PORTILLO,<br><br>Plaintiffs,<br><br>-against-<br><br>RAYMOURS FURNITURE COMPANY, INC.,<br><br>Defendant. | Civil Action No.: 2:17-cv-01923(JFB/ARL)<br><br>**DECLARATION OF STEPHEN MCPEAK IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS PLAINTIFFS' COMPLAINT, AND STRIKE PLAINTIFFS' CLASS AND COLLECTIVE ALLEGATIONS** |

**STEPHEN MCPEAK**, hereby swears under the penalty of perjury as follows:

1. I am currently employed by Defendant Raymours Furniture Company, Inc. ("Raymour & Flanigan" or the "Company"), as its Vice President of Human Resources. I have held this position since June 2010. Prior to that time, I served as the Company's Director of Compensation and Benefits.

2. As the Vice President of Human Resources, my responsibilities include managing the personnel who maintain the Company's business records (such as personnel files) concerning employees who work or have worked for Raymour & Flanigan. I am also responsible for developing, implementing and ensuring compliance with Raymour & Flanigan's work rules, policies and procedures.

3. As a function of my responsibilities, summarized above, and based upon my personal knowledge and a review of Raymour & Flanigan's business records, I am fully familiar with the facts set forth herein.

4. Raymour & Flanigan is a corporation incorporated under the laws of the State of New York and has its principal place of business in Liverpool, New York. Raymour & Flanigan

operates retail furniture stores in seven states, including New York.

5. Raymour & Flanigan has adopted an Employee Arbitration Program ("EAP"). The EAP is written and presented to employees in an easy-to-read, FAQ-type format. It states that the Program is "an essential, required term and condition of your continued employment." A copy of the EAP, entitled "Raymour & Flanigan Employment Arbitration Program Terms," is attached hereto as **Exhibit 1**.

6. I understand that Plaintiffs Eric Castellanos, Luis Rios, Allen Stetler, Jean Pierre Louis, and Jose Portillo ("Plaintiffs") filed a putative class and collective action against the Company, and that Opt-In Plaintiffs Edwin Hernandez, Romney Olalla, Christian Rodriguez, Hugo Sanchez, and Santiago Pena ("Opt-In Plaintiffs") consented to join the case by filing consent forms with the Court. The EAP was in effect during Plaintiffs' and the Opt-In Plaintiffs' employment with Raymour & Flanigan, and it remains in effect today.

7. The EAP requires employees to submit to final and binding arbitration all employment and compensation-related "Claims" that are asserted or pursued at any time after February 1, 2014, even if those Claims arose or were initially asserted before that date. (Exhibit 1, p. 1.)

8. The EAP describes covered disputes as follows:

> The Program covers all employment and compensation-related "Claims" between "you" and "R&F" (defined below) asserted or pursued at any time after February 1, 2014, even if those Claims arose or were initially asserted before that date. It includes disputes regarding any compensation plans you enter or entered into with Raymour & Flanigan.

(Exhibit 1, p. 1).

9. The term "Claims" is defined as follows:

> [A]ny employment-related or compensation-related claims, disputes, controversies or actions between you and us (including

2

any parties named as codefendants with us) that: (1) in any way arise from or relate to your employment or the termination of your employment with us; and (2) are based upon a "legally-protected right." This includes disputes about your hiring, firing, wages, compensation, discipline, leaves of absence, accommodations and workplace treatment as well as our policies and practices (including any pattern, practice, act or omission) relating to such matters. Examples include (but are not limited to) those alleging discrimination, harassment, hostile work environment, retaliation, or failure to pay wages in accordance with law. "Claim" means not only initial claims but also counterclaims, cross-claims and third-party claims, regardless of whether such claims seek legal, equitable or declaratory relief.

(Exhibit 1, p. 2).

10. The EAP also defines a "legally-protected right" and identifies, without limitation, specific state and federal laws covered by the EAP as follows in relevant part:

> ""Legally-protected right" means any right protected by statute, regulation, constitution, contract or common law, including but not limited to rights under:
>
> - ... [T]he Fair Labor Standards Act;
> - [S]tate wage and hour laws; ...
> - [A]ny other federal, state or local statute, regulation or common law doctrine regarding employment discrimination, retaliation, whistleblowing, leave of absence, interference with protected rights, conditions of employment or termination of employment or payment of wages or other benefits of employment.

(Exhibit 1, pp. 2-3).

11. The EAP also requires employees to pursue "Claims" as so-defined individually rather than on a class or collective action basis, which is again explained to employees in the same easy to understand FAQ format as follows:

> **CAN CLAIMS BE DECIDED BY CLASS OR COLLECTIVE ACTION?**
> **No. This section describes the "Class Action Waiver" of the Program. Claims cannot be litigated or arbitrated by way of a class or collective action. All Claims between you and us must be decided individually. Neither you nor we will have the right,**

3

> with respect to any Claim, to do any of the following in court or before an arbitrator:
> • obtain relief from a class action or collective action, either as a class
> representative, class member or class opponent;
> • act as a private attorney general; or
> • join or consolidate your Claim with the Claims of any other person.
>
> **The arbitrator shall have no authority or jurisdiction to process, conduct or rule upon any class, collective, or private attorney general proceeding.**

(Exhibit 1, p. 7).

12. Each Plaintiff and Opt-In Plaintiff in this case agreed to the terms of the EAP by signing a document entitled "Associate's Agreement & Consent" (the "Agreement"). By signing the Agreement, each of them acknowledged that he had received a copy of the EAP, that he had a full and fair opportunity to review the EAP, and that he agreed to its terms.

   a. A true and correct copy of the Agreement that **Eric Castellanos** signed on or around March 18, 2014 is attached hereto as **Exhibit 2**;

   b. A true and correct copy of the Agreement that **Luis Rios** signed on or around March 18, 2014 is attached hereto as **Exhibit 3**;

   c. A true and correct copy of the Agreement that **Allen Stetler** signed in March 2014 is attached hereto as **Exhibit 4**;

   d. A true and correct copy of the Agreement that **Jean Pierre Louis** signed on or around March 19, 2014 is attached hereto as **Exhibit 5**;

   e. A true and correct copy of the Agreement that **Jose Portillo** signed on or around April 28, 2014 is attached hereto as **Exhibit 6**;

   f. A true and correct copy of the Agreement that **Edwin Hernandez** signed on or around March 29, 2014 is attached hereto as **Exhibit 7**;

  g. A true and correct copy of the Agreement that **Romney Olalla** signed on or around March 18, 2014 is attached hereto as **Exhibit 8**;

  h. A true and correct copy of the Agreement that **Christian Rodriguez** signed on or around April 5, 2014 is attached hereto as **Exhibit 9**;

  i. A true and correct copy of the Agreement that **Hugo Sanchez** signed on or around May 27, 2014 is attached hereto as **Exhibit 10**; and

  j. A true and correct copy of the Agreement that **Santiago Pena** signed on or around March 18, 2014 is attached hereto as **Exhibit 11**.

13. The Agreement incorporates the EAP by reference, and reiterates several key concepts set forth in the EAP. For example, Plaintiffs and Opt-In Plaintiffs acknowledged their understanding that "**if [they] attempt[ed] to assert any Claims against R&F by means other than arbitration described in the Program, R&F w[ould] have the unqualified right to require [them] to arbitrate such Claims in accordance with the Program.**" Each Plaintiff and Opt-In Plaintiff also agreed that he would "**not seek and [could not] seek (in arbitration or otherwise) to have any Claims decided on a class or collective actions basis.**" The Agreements state that the term "Claims" "has the meaning defined in the Program and includes "employment and compensation-related claims, disputes, controversies or allegations . . . against R&F . . . [including] disputes about . . . employment, discharge, wages, discipline, leaves of absence, accommodations and workplace treatment as well as Raymour & Flanigan's policies and practices. **Examples include but are not limited to Claims alleging . . . failure to pay wages under such laws as . . . the Fair Labor Standards Act . . . and any similar federal, state and local laws addressing . . . wage payment or other employment-related rights.**" (Exhibits 2-11) (emphasis in original).

14. Each Plaintiff and Opt-In Plaintiff in this case continued his employment with the Company after signing the Agreement.

15. In 2014, another former employee of Raymour & Flanigan filed a complaint against the Company, in *Patterson v. Raymours Furniture Company, Inc.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015), *aff'd*, 2016 WL 4598542 (2d Cir. Sept. 26, 2016) (Summary Order), asserting class and collective wage and hour claims under the Fair Labor Standards Act and New York Labor Law. The plaintiff in that case, Connie Patterson, agreed to the terms of Raymour & Flanigan's arbitration program then in effect as a condition of her employment, which were set forth in the Company's handbook. Her employment ended in February 2014. Like the arbitration program to which the ten Plaintiffs and Opt-In Plaintiffs in this case agreed, the program to which Patterson agreed required employees "to arbitrate 'any employment-related or compensation-related claims . . . that in any way arise from or relate to [their] employment with us . . . and that are based upon a legally protected right.'" *Id.* at 75. Based on this agreement, Raymour & Flanigan filed a motion to compel Patterson to pursue her claims in arbitration on an individual basis. *Id.* at 71. The court in *Patterson* granted the motion. *Id.* at 81. A copy of the arbitration program to which Patterson agreed, which the court in *Patterson* enforced, and which appeared on pages 58 through 67 of Raymour & Flanigan's 2013 employee handbook, is attached as **Exhibit 12**.

16. The arbitration program to which Plaintiffs and the Opt-In Plaintiffs here agreed (Exhibit 1) is an updated version of the arbitration program to which Patterson agreed (Exhibit 12), and was adopted after Patterson's employment ended.

///

///

I further declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements made by me are true and correct.

Executed at  Syracuse  , New York, this 27 day of July, 2017.

_____
STEPHEN MCPEAK